IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

COBY TOWNSEND HURST                                                                                         PLAINTIFF

v.                                Civil No. 5:21-cv-05029

DR. MARK RUCKER, Mercy Hospital Northwest
Arkansas; NURSE DANIEL BURSON, Mercy
Hospital Northwest Arkansas; and MERCY HOSPITAL
ROGERS, d/b/a Mercy Hospital Northwest Arkansas                                              DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Coby T. Hurst ("Hurst"), currently an inmate of the Delta Regional Unit of the Arkansas Division of Correction, filed this civil rights action under 42 U.S.C. § 1983. Hurst proceeds *pro se* and *in forma pauperis* ("IFP"). He names as Defendants Dr. Mark Rucker, Nurse Daniel Burson, and Mercy Hospital Rogers d/b/a Mercy Hospital Northwest Arkansas ("Mercy Hospital"). Hurst's claim centers on the "forced" use of a catheter to obtain a urine sample. Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court on the Motion for Summary Judgment (ECF No. 20) filed by Nurse Daniel Burson and Mercy Hospital. Dr. Rucker submitted a Motion for Summary Judgment (ECF No. 24) asking to adopt the previous motion. The request was granted (ECF No. 25). The only additional evidence submitted by Dr. Rucker was his own affidavit.

1

## I. BACKGROUND

On June 9, 2019, at approximately 8:00 a.m., Hurst injected a half a gram of methamphetamine laced with PCP and OxyContin. (ECF No. 20 at 9 & 14). After having taken the methamphetamine, Hurst "got really hot" and undressed. *Id.* at 14. Although he tried to tie his racing bicycle suit around him so his penis could not be seen, it fell off as soon as he stepped off his porch. *Id.* at 14-15. Hurst "want[ed] to go beat up the neighbor kid [Ben Cameron] who sabotaged my racecar engine [by putting a bolt down the motor' and . . . went over and knocked on his door and he wouldn't come outside, and called police." *Id.* at 9 & 15. When Cameron did not come out, Hurst noticed some dirty oil on the porch. *Id.* at 16. Hurst, who believed "God was going to flood the place," took the oil and poured it on the neighbor's car so it would not rust when the water went away. *Id.* Hurst poured oil on the neighbor's work van too. *Id.* Hurst tried to save the neighbor's German Shepherd but it would not come over the fence with him and the dog was too heavy for him to lift. *Id.*

At this point, Hurst noticed a police car. (ECF No. 20 at 16). He saw a kiddie pool in another backyard and decided to "go swimming before the cops arrested me." *Id.* Hurst dove in with his chest flat on the ground and his "arms out flat in the give-up position," *i.e.,* on his face with his hands behind him *Id.* at 16-17 & 18. At this point, a police officer came up to Hurst "with his handcuffs on his hand like brass knuckles" and hit Hurst "three times in the head." *Id.* at 17-18. Hurst stood and punched the officer in the jaw. *Id.* at 18. Hurst "took off running around the corner and I tried to run through the fence, and it wouldn't—I bounced back in cop's arms. And that was the end of it." *Id.* at 19.

Hurst testified that other than being in pain he sustained no injuries at the scene. (ECF

2

No. 20 at 19). Hurst was taken by ambulance to Mercy Hospital. *Id*. At the hospital, Hurst was asked to urinate in "some type of jug" because the doctor had ordered a urinalysis. *Id.* at 20. Hurst stated he could not urinate and asked the nurse to turn the water on. *Id*. His request was refused and he was just told to "pee." *Id.* at 20 & 24. Hurst did not believe they gave him a sufficient amount of time to urinate. *Id.* at 24. Hurst was told they would use a catheter to obtain the necessary urine. *Id*. At this point, Hurst testified he started screaming: "No." *Id.* at 20-21. Hurst did not believe they needed to perform a urinalysis since he told them what drugs he had taken and they had drawn blood. *Id.* at 21. Hurst admits the officer present was not involved in ordering the urinalysis and that the test was ordered solely by the doctor. *Id.* at 21-22.

The catheterization was done by Nurse Burson while someone held Hurst's legs. (ECF No. 20 at 23 & 47). Hurst was handcuffed to the bed. *Id.* at 24. Hurst said "[n]o, don't do this" and was "going off on them." *Id.* at 25. While the catheter was being used, which took a "minute and a half, [to] two minutes,[1]" Hurst was as still as possible.[2] *Id.* at 25-26. Hurst testified it was very painful; he "screamed in pain as they pulled it out;" and they "scratched something in my— in my insides in the tube that totally affected when I ejaculate now." *Id.* at 26. Specifically, Hurst indicates that since he was catharized it does not "feel good" when he ejaculates. *Id.* at 26. Afterwards, he said that "God is going to kill all y'all. God is going to take China nuclear bombs and blow this place to smithereens and kill all your families and kill all you rapeos." *Id.* at 25. Hurst testified he never stopped screaming. *Id.*

---

[1] Mercy Hospital records list the catheter placement time as 1246 and completion time as 1420. (ECF No. 20 at 59).
[2] While the catheter was in place, Hurst believed "they hit a button and shock your insides with electricity and the pee shoots out." (ECF No. 20 at 26). While it might not have actually been done that way, Hurst testified that is how it felt to him. *Id.*

3

Hurst has not sought any care or treatment for his penis. (ECF No. 20 at 27). He does not believe there is anything that can be done for "an inside scratch on – in your urethra." *Id.* However, he did believe he complained at the jail. *Id.*

After looking at the hospital records, Hurst named multiple people as Defendants because he could not tell from the records who was directly involved in the catheterization. (ECF No. 20 at 12). At his deposition, Hurst testified he only intended to sue the doctor, Dr. Rucker, who order the urinalysis, and Nurse Burson, the nurse who catheterized him. *Id.* at 12-13. In responding to the summary judgment motions, Hurst clarified that he also intended to proceed directly against Mercy Hospital.[3] (ECF No. 27 at 4).

The Mercy Hospital records indicate Hurst arrived by ambulance, escorted by the police, at 10:30 a.m. (ECF No. 20 at 30). The chief complaint is listed as altered mental status. *Id.* Hurst complained of head pain and had a laceration on his head. *Id.* Dr. Rucker was the attending physician. *Id.* Hurst was noted to be restless, agitated, and hyperactive. *Id.* at 32. Note was made that his thoughts were scattered. *Id.* Dr. Rucker ordered a series of tests including a CT of Hurst's head, a chest x-ray, an EKG, and multiple laboratory tests including a "drug screen, urine." *Id.* at 34-36 & 47. The laboratory tests were ordered at 10:35 a.m. *Id.* at 47. The chest x-ray and EKG were ordered because of complaints of chest pain. *Id.* at 43-44. The final diagnoses are listed as methamphetamine abuse and altered mental status, unspecified altered mental status type. *Id.* at 37.

By affidavit, Dr. Rucker indicates he is "an emergency room physician primarily providing

---

[3] In his summary judgment response, Hurst clarifies that he agrees to the dismissal of Caleb Miller and Nurse Nachtigal. (ECF No. 27 at 4). Hurst, however, does not agree to the dismissal of Mercy Hospital. *Id.* Caleb Miller and Nurse Nachtigal were terminated as Defendants by agreement of the parties on March 24, 2022.

medical services at Mercy Hospital Northwest Arkansas." (ECF No. 24-1 at 1). At all times relevant to the Complaint, Dr. Rucker indicates he was an independent contractor providing medical care to Hurst in his "capacity as a private physician." *Id.* Dr. Rucker indicates he was not employed by any state or federal entity. *Id.*

By affidavit, Eric Pianalto, the President for Mercy Hospital, indicates the hospital is "a faith-based, Catholic not-for-profit hospital." (ECF No. 20 at 60). He indicates it is a private institution and that on June 9, 2019, Daniel Burson was an employee of the hospital. *Id.*

## II. APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Com. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat. Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is

5

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Defendants maintain they are entitled to summary judgment on the following grounds: First, Defendants argue Hurst failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act. Second, the Defendants assert they were not state actors and were not acting under color of law. Defendants say that even if they could be considered to be acting under color of law, they are entitled to qualified immunity. Defendants next contend there was no unreasonable search and seizure under the Fourth Amendment. Fourth, Defendants argue that rape is not recognized or cognizable civil claim. Fifth, assuming Hurst has stated an Eighth Amendment claim, Defendants argue that his claims do not meet the required deliberate indifference threshold. Finally, Defendants maintain Hurst has failed to show a physical injury or sexual act sufficient to sustain a § 1983 claim.

#### A. Failure to Exhaust

Section 1997e(a) provides that: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (cleaned up). A prisoner's remedies are exhausted "when

[the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012). Non-exhaustion is an affirmative defense. *Jones*, 549 U.S. at 211-12.

Defendants seek to avail themselves this affirmative defense while at the same time arguing they do not act under color of law. An interesting juxtaposition of arguments. Setting aside for the moment whether Defendants were acting under color of law, this affirmative defense is unavailable for other reasons. First, Hurst was not a prisoner within the definition of this statutory provision at the time he was treated at Mercy Hospital; he was merely under arrest and was not confined to a jail, prison, or other correctional facility. Second, Hurst's claims do not relate to prison conditions. Third, the grievance procedure of the Benton County Detention Center ("BCDC"), on which Defendants rely, was not available to Hurst for claims arising *prior* to his being booked into the facility. The defense of exhaustion is inapplicable.

## B. Color of Law

"Section 1983 secures most constitutional rights from infringement by governments, not private parties." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (cleaned up). "Private actors may incur section 1983 liability only if they are willing participants in a joint action with public servants acting under color of state law." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 536 (8th Cir. 1999)(cleaned up). Thus, a private physician or nurse may act under color of state law when he or she is under contract with the governmental entity, conspires with governmental actors, or otherwise takes on the government's obligation to provide medical care rather than merely assisting in the provision of care. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 n. 2,

295-96 (2001) (discussing the under color of law requirement of § 1983 and state-action requirement of the Fourteenth Amendment and listing multiple tests used to determine whether a private party is a state actor). To proceed under § 1983, Hurst "must establish, at the very least, an agreement or meeting of the minds between the private and state actors, and a corresponding violation of the [his] rights under the Constitution or laws of the United States." *Johnson*, 172 F.3d at 536.

Hurst cannot establish any meeting of the minds between Dr. Rucker and/or Nurse Burson and the police officer at the scene. Hurst admits that Dr. Rucker was solely responsible for ordering the urinalysis as well as a variety of other tests. Hurst also agrees Nurse Burson made the decision to cathetertize him by force. Finally, Hurst concedes the police officer at the hospital with him was not involved in this decision making. Similarly, Mercy Hospital was not under contract with the police department or the BCDC to provide medical services and there is no evidence the urinalysis was used for law enforcement purposes. "[P]rivate conduct, no matter how egregious, discriminatory, or harmful, is beyond the reach of § 1983." *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007). For these reasons, Defendants did not act under "color of law" for purposes of establishing liability under § 1983.

C. **Violation of Arkansas Rape Laws**

Hurst maintains Nurse Burson's actions constitute rape within the meaning of Ark. Code Ann. § 5-14-101. "[F]ederal courts are not entrusted with the responsibility of ensuring the effective enforcement of state criminal laws; that role falls to state and local law enforcement authorities. It is the duty of executive officials–not the courts–to take care that the criminal laws are faithfully executed." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1205 (10th Cir. 2004)(citing U.S. Const., art. II, § 3; *Morrison v. Olson*, 487 U.S. 654, 690 (1988)). Similarly, victims of crime

8

lack any legal right to compel criminal prosecution or to institute criminal prosecution. *See Diamond v. Charles,* 476 U.S. 54, 64-65 (1986); *Frison v. Zebro*, 339 F.3d 994, 998-1000 (8th Cir. 2003)(rejecting a § 1983 claim based on the violation of a criminal statute). Hurst's claim of rape fails as a matter of law.

## IV. CONCLUSION

For the reasons stated, it is recommended that the Defendants' Motions for Summary Judgment (ECF Nos. 20 & 24) be **GRANTED and this case be DISMISSED WITH PREJUDICE.**

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of March 2022.

*Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

9